**CHURCH OF SCIENTOLOGY INTERNATIONAL,**
Plaintiff,

v.

**TIME WARNER, INC., Time Inc. Magazine Co., and Richard Behar, Defendants.**

**No. 92 Civ. 3024(PKL).**

United States District Court, S.D. New York.

Nov. 23, 1992.

**1158**

Morrison Cohen Singer & Weinstein (Jonathan W. Lubell, of counsel), Michael Lee Hertzberg, New York City, Bowles & Moxon, Hollywood, Cal. (Timothy Bowles, of counsel) for plaintiff.

Cahill Gordon & Reindel (Floyd Abrams, Dean Ringel, Phillip Essig, Adam Liptak, of counsel), Time Inc. (Harry M. Johnston, Robin Bierstadt, Robert P. Marshall, Jr., of counsel), New York City, for defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Defendants Time Warner Inc., Time Inc. Magazine Co., and Richard Behar (collectively "Time") move this Court for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing this action for failure to state a claim upon which relief can be granted. For the following reasons, the motion is denied.

## BACKGROUND

Plaintiff Church of Scientology International ("CSI") brought this action to recover for damages allegedly suffered from the publication of false and defamatory statements concerning CSI in the cover story of the May 6, 1991 issue of *Time* magazine (the "Article"). The complaint alleges that six passages or sets of statements libeled CSI. The defendants challenge the sufficiency of the complaint, arguing that CSI has failed adequately to assert that the allegedly libelous statements are of and concerning CSI. Time additionally argues that plaintiff's allegations fail to state a valid claim not barred by the group libel doctrine. Further, Time contends that CSI can not demonstrate the individualized and distinct damages necessary to justify relief from the group libel doctrine.[1]

For the purposes of this motion to dismiss, the allegations in the complaint are assumed to be true. *See Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *Allen v. Westpoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991).

CSI alleges that the Article, entitled "Scientology: the Cult of Greed," is based on the thesis "that the Scientology religion is not an 'acceptable' religion for the social mainstream" and contains "unwarranted and bigoted attacks on the Scientology religion." *See* Complaint, ¶¶ 3, 22. The Complaint challenges six passages as false and defamatory. *See* Complaint, ¶¶ 40, 45, 52, 58, 62, 67. None of the six passages men-

---

1. The defendants also suggest that the action could be dismissed under the doctrine of the libel-proof plaintiff. Recognizing that this issue would be difficult to resolve at this early stage of the litigation, however, Time elected not to press this argument at this time.

tions CSI; in fact, CSI is mentioned only once in the eight page article, in the caption of a photograph depicting CSI's Los Angeles Headquarters. *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Time Memo."), Ex. 1, at 56. Nevertheless, CSI claims that the allegedly defamatory statements are of and concerning CSI because

> the reading audience, and those that heard of the statements and meanings, including those members of the general public who knew the plaintiff, regarded any reference to Scientology or the activities or statements of any Scientology Church, Mission or Scientologist as referring to the plaintiff which, as the Mother Church, was regarded as responsible for or the cause of such activities and statements and, in particular, for the specific activities and statements charged in the article.

Complaint, ¶ 29. In addition to this generalized allegation concerning its connection to the Article, plaintiff also asserts that the six statements are of and concerning CSI on separate, particularized grounds. *See* Complaint, ¶¶ 41, 46, 53, 59, 63, 68.

The Church of Scientology has a hierarchical structure consisting of numerous entities. As noted by the Court of Claims in *Church of Spiritual Technology v. United States,* 26 Cl.Ct. 713 (1992),[2] CSI is one of three "management churches" and is the Mother Church of the Scientology religion. *Id.,* 26 Cl.Ct. 713, at 717; *see also* Complaint, ¶ 6. That court identified nearly 200 organizations that collectively constitute the Church of Scientology. *Id.,* 26 Cl.Ct. 713, at 717, n. 9. CSI claims to be the top figure in Scientology's hierarchical structure and thus maintains that the activities of all Scientology entities are ascribed to CSI.

## DISCUSSION

**A.** *Standard Governing Dismissal under Rule 12(b)(6)*

The Court now turns to consider the sufficiency of the complaint under Fed.

R.Civ.P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3, Int'l Bhd. of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980))).

A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *see also Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir. 1991). Although the Court must limit its analysis to the four corners of the complaint, it also may consider documents incorporated into the complaint by reference and information that can be judicially noticed. *Allen,* 945 F.2d at 44. Thus, in this case, the Court may consider the Article in assessing the sufficiency of the Complaint. In addition, the Court must draw all reasonable inferences in plaintiff's favor. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Allen,* 945 F.2d at 44; *Murray v. Milford,* 380 F.2d 468, 470 (2d Cir.1967); *Hill v. Sullivan,* 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("[A]ll allegations in plaintiffs' amended complaint must be accepted as true and liberally construed.").

**B.** *The "Of and Concerning" Requirement*

To withstand a motion to dismiss, the libel plaintiff must "advance[ ] color-

---

**2.** The Court properly may take judicial notice of reported decisions dealing with various Scientology organizations. *See, e.g., E.I. Du Pont de Nemours Co. v. Cullen,* 791 F.2d 5, 7 (1st Cir. 1986); *United States v. Estep,* 760 F.2d 1060, 1063 (10th Cir.1985).

able claims of having been identified and described by defamatory comment." *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980); *accord Bee Pub., Inc. v. Cheektowaga Times, Inc.*, 107 A.D.2d 382, 385, 485 N.Y.S.2d 885, 888 (4th Dep't 1985); *cf. Springer v. Viking Press*, 60 N.Y.2d 916, 917, 470 N.Y.S.2d 579, 580, 458 N.E.2d 1256, 1257 (1983) ("of and concerning" requirement is an essential element of a libel claim). Although the "of and concerning" requirement is generally an issue of fact, which the jury alone may decide, the Court properly may dismiss an action pursuant to Rule 12(b)(6) where the statements "are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff." *Handelman v. Hustler Magazine, Inc.*, 469 F.Supp. 1048, 1050 (S.D.N.Y.1978). Whether the complaint alleges facts sufficient to demonstrate a reasonable connection between the plaintiff and the alleged libel is thus a question for the Court. *See Mullenmeister v. Snap-On Tools Corp.*, 587 F.Supp. 868, 872 (S.D.N.Y.1984). In determining whether the "of and concerning" requirement has been sufficiently pleaded, the Court must consider whether those who know the plaintiff, upon reading the statements, would understand that the plaintiff was the target of the allegedly libelous statement. *See Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925 (2d Cir.1987) ("It is not necessary that all the world should understand the libel.").

■ Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Provisional Government of the Republic of New Afrika v. American Broadcasting Companies*, 609 F.Supp. 104, 108 (D.D.C.1985) ("a defamatory statement directed against a group or class does not generally give rise to a cause of action on behalf of its individual members"); *Church of Scientology v. Flynn*, 578 F.Supp. 266, 269 (D.Mass.1984); *Talal v. Fanning*, 506 F.Supp. 186, 187 (N.D.Cal. 1980) (dismissing libel claim pursuant to group libel doctrine). Thus, if a plaintiff is libeled as a member of a large group, the "of and concerning" requirement is not properly pleaded. Court have often had occasion to note that the public interest in ensuring open and vigorous debate occasionally results in some injury to an individual as the result of a libel of his profession, political party, or sect. If such damages were actionable, free expression would be impaired by the threat of liability. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; *Ryckman v. Delavan*, 25 Wend. 186, 199 (N.Y.1840); *People v. Edmondson*, 168 Misc. 142, 146, 4 N.Y.S.2d 257, 260–62 (Gen.Sess.N.Y.Co.1938). In order to overcome the group libel doctrine, the plaintiff must demonstrate that "the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the member." Restatement (Second) of Torts, § 564A(b).

In determining whether CSI has satisfactorily pleaded the "of and concerning" requirement, the Court must determine whether the allegedly libelous statements directly or impliedly referred to CSI. Additionally, the Court must decide whether any reference to CSI in the Article arose solely from its status as one of the numerous entities that constitute the Church of Scientology, thus implicating the group libel doctrine and, if these statements involved group libel, whether CSI was referred to in any particular way so as to escape the constraints of the group libel doctrine.

The Court must emphasize the procedural setting of this case. The Court is called upon to determine whether CSI's complaint is sufficient to survive a motion to dismiss, not whether Time is liable to CSI for defamation. Moreover, this motion is directed exclusively at one of the essential elements of a libel claim: the "of and concerning" requirement. While other defenses may shield Time from liability, those issues are not presently before the Court and thus may not be considered.

### C. The Allegedly Libelous Statements

■ Prior to individual consideration of each of the allegedly libelous statements, the Court must note certain statements in the Article that are not included in the complaint as alleged libels. Consideration of these references may explain CSI's connection to the statements and thus may inform the determination of whether the six statements sued upon reference CSI.

■ CSI is mentioned in name only once during the article: CSI is pictured in one of six photographs on page 56 of the Article and the photograph is captioned "Church of Scientology International headquarters, Los Angeles." While this photograph, standing alone, is insufficient to create a jury question as to whether a portion of the reading public would regard the allegedly defamatory statements as referring to CSI, the "of and concerning" requirement could be satisfied when the photograph and caption are considered in conjunction with other statements in the Article.

The Article also contains repeated references to "Scientology," the "Church of Scientology," the "church," and the "Los Angeles-based church." *See*, Time Memo., Ex. 1, *passim*. CSI's suggestion that any reference to Scientology is necessarily a reference to CSI encounters the bar of the group libel rule. CSI is one of hundreds of Scientology entities implicated by a reference to "Scientology." Because CSI has failed to demonstrate that the references in the Article to "Scientology" particularly refer to CSI, as differentiated from the hundreds of other Scientology entities, the Article's references to "Scientology" do not support a finding that CSI has sufficiently pleaded the "of and concerning" requirement. *See* Restatement (Second) of Torts § 564A(b).

The Court finds, however, that the Article's discussion of the "Church of Scientology" and the "church" could support a finding that some of the six allegedly defamatory statements are reasonably connected to CSI, given the hierarchical structure of the Church of Scientology. *See Church of Scientology of California v. Flynn*, 744 F.2d 694, 697 (9th Cir.1984). Moreover, the reference to the "Los Angeles-based church" could be considered a direct reference to CSI. Although there are other Scientology churches in California, it appears that the limited number of such churches is insufficient to compel application of the group libel rule. Considering CSI's capacity as "Mother Church," the hierarchical structure of Scientology, and the caption of the photograph identifying CSI's headquarters as being located in Los Angeles, the Court finds that these statements could support a finding that CSI sufficiently has pleaded a reasonable connection to the statements sued upon.

■ Plaintiffs also allege that the reading public would understand that any reference to the activities or statements of any Scientologist would be understood to refer to CSI. *See* Complaint, ¶ 29. This legal proposition is erroneous and must be rejected as a matter of law. *See Provisional Government of the Republic of New Afrika*, 609 F.Supp. at 108 ("Allegations of defamation by an organization and its members are not interchangeable. Statements which refer to individual members of an organization do not implicate the organization.") Without more, reference to the activities of individual Scientologists can not create a right of action in CSI. Plaintiff's suggestion would result in a constriction of the scope of permissible speech, as every reference to a person's religion would expose the speaker to liability, or at least extended litigation, concerning an alleged libel of the subject's "mother church." Further, plaintiff's proposition can not overcome the prohibition of the group libel doctrine, as it has failed to demonstrate a particular reference to CSI. Thus, the Court has determined that references to the activities or statements of individual Scientologists or groups of Scientologists are not of and concerning CSI.

■ Sufficiently informed by statements in the Article that are not the subject of CSI's complaint and certain facts which may be judicially noticed, the Court now turns to consider individually the six allegedly libelous statements.

### 1. Paragraph 40

Paragraph 40 of the complaint alleges that the following statements in the Article libeled CSI:

"[T]he church ... survives by intimidating members and critics in a Mafia-like manner."

. . . .

" 'Scientology is quite likely the most ruthless, the most classically terroristic ... cult the country has ever seen.' "

. . . .

"Those who criticize the church—journalists, doctors, lawyers and even judges—often find themselves framed for fictional crimes, beaten up or threatened with death."

Complaint, ¶ 40.[3] A jury reasonably could find that the statements discussing "church" activities referred specifically to CSI, as Mother Church and one of Scientology's three management churches. Thus, the group libel bar is inapplicable to this statement, as the jury could find that the statement refers to a specific actor and not Scientology as a whole. *See Flynn*, 744 F.2d at 697.

Having avoided the principle of group libel, CSI still must demonstrate that the statement is of and concerning CSI. Defendant has pleaded that

The aforesaid statements were understood by the public who read or was informed of them to have the following false and defamatory meanings:

A. Plaintiff is guilty of violence and threats of violence similar to the Mafia.

B. Plaintiff heads the most ruthless and terroristic cult in this country's history.

C. Plaintiff frames its critics, beats them up and threatens them with death.

Complaint, ¶ 41. Additionally, the Court must consider that those who were familiar with the plaintiff might know that it is the Mother Church of Scientology and one of three management churches. While the reference in this set of statements is to the "church," clearly Time can not avoid a finding that the statements are of and concerning CSI merely by using the term "church" instead of "Church." Under the circumstances of this case, a jury reasonably could find that the term "church," as used in these statements, specifically referred to CSI. The Court finds that CSI sufficiently has pleaded the "of and concerning" requirement with respect to paragraph 40 of the complaint.

### 2. Paragraph 45

Paragraph 45 of the complaint alleges that the following passage in the Article libeled CSI:

"Occasionally a Scientologist's business antics land him in jail. Last August a former devotee named Steven Fishman began serving a five-year prison term in Florida. His crime: stealing blank stock-confirmation slips from his employer, a major brokerage house, to use as proof that he owned stock entitling him to join dozens of successful class-action suits. Fishman made roughly $1 million this way from 1983 to 1988 and spent as much as 30% of the loot on Scientology books and tapes.

"Scientology denies any tie to the Fishman scam, a claim strongly disputed by both Fishman and his longtime psychiatrist, Uwe Geertz, a prominent Florida hypnotist. Both men claim that when arrested, Fishman was ordered by the church to kill Geertz and then do an 'EOC,' or end of cycle, which is church jargon for suicide."

Complaint, ¶ 45. Much of this passage is not of and concerning the plaintiff. As discussed *supra*, CSI has failed to demonstrate a reasonable connection to the activities of individual Scientologists such that these statements can be said to be of and concerning CSI. CSI alleges that the reading public understood this passage to mean that CSI was engaged in ordering people to commit murder and suicide. Complaint, ¶ 46. The general reference to "the church" could reasonably be interpreted to mean CSI, as CSI sits at the top of the hierarchical structure that constitutes the

---

**3.** Where quotations of the *Time* article in the complaint differ from the original text, the Court will quote the statements as they appeared in the Article.

Church of Scientology. Thus, CSI has successfully pleaded the "of and concerning" requirement with respect to paragraph 45 of the complaint.

### 3. Paragraph 52

Paragraph 52 of the complaint alleges that the following statements in the Article libeled CSI:

> "One source of funds for the Los Angeles-based church is the notorious, self-regulated stock exchange in Vancouver, British Columbia, often called the scam capital of the world."
>
> . . . .
>
> "Bayback, 49, who runs a public relations company staffed with Scientologists, apparently has no ethics problem with engineering a hostile takeover of a firm he is hired to promote."
>
> . . . .
>
> " 'What these guys do is take over companies, hype the stock, sell their shares, and then there's nothing left.' "
>
> . . . .
>
> " 'They stole this man's property' "

Complaint, ¶ 52. As the Court has noted, *supra*, the references to the activities of individual Scientologists, standing alone, fail to satisfy the "of and concerning" requirement. The Court is doubtful as to whether this set of statements is truly of and concerning CSI. Plaintiff claims that it has demonstrated a sufficient connection to these statements to withstand a motion to dismiss. Plaintiff alleges:

> The aforesaid statements were understood by the public who read or were informed of them to have the false and defamatory meanings that plaintiff obtains funds by participating in scams on the Vancouver Stock Exchange ("VSE") and that plaintiff's VSE activities include use of Scientologists who are unethical, who strip companies of their value and who steal the property of entrepreneurs.
>
> . . . .
>
> The aforesaid false and defamatory statements were understood to be of and concerning plaintiff since plaintiff is based in Los Angeles, the activities referred to were understood to be for the

purpose of supplying a source of funds to plaintiff and it was understood that plaintiff was responsible for the activities of Scientologists involved in creating a source of funds for it.

Complaint, ¶¶ 53, 57. Clearly, the reference to the "Los Angeles-based church" could reasonably be understood to refer to CSI, as CSI is based in Los Angeles and is at the top of the hierarchial structure of the Church of Scientology. Conversely, statements concerning the activities of individual Scientologists are not of and concerning CSI. While the connection to CSI in the above-quoted passage from the Article is weak, the Court has determined that, under the particular facts of this case, CSI sufficiently has pleaded the "of and concerning" requirement as to this statement. Thus, this allegation can withstand Time's motion to dismiss.

### 4. Paragraph 58

Paragraph 58 of the complaint alleges that the following statements in the Article libeled CSI:

> "THE LOTTICKS LOST THEIR SON, Noah, who jumped from a Manhattan hotel clutching $171, virtually the only money he had not yet turned over to Scientology. His parents blame the church and would like to sue but are frightened by the organization's reputation for ruthlessness."
>
> . . . .
>
> "His death inspired his father Edward, a physician, to start his own investigation of the church. 'We thought Scientology was something like Dale Carnegie,' Lottick says. 'I now believe it's a school for psychopaths. Their so-called therapies are manipulations. They take the best and brightest people and destroy them.' "
>
> . . . .
>
> "It was too late. 'From Noah's friends at Dianetics' read the card that accompanied a bouquet of flowers at Lottick's funeral. Yet no Scientology staff members bothered to show up."

Complaint, ¶ 58. The discussion of certain activities undertaken by "the church" and the Lotticks' fears of "the organization"

provide a connection to CSI sufficient to satisfy the "of and concerning" requirement. CSI alleged in the complaint that

The aforesaid statements were understood by the public who read or was informed of them to have the false and defamatory meanings that the plaintiff was responsible for Noah Lottick's death, that plaintiff had bankrupted him causing him to commit suicide, that because Noah Lottick's parents were frightened by the Church, they have not sued it, and that Church staff members were unfeeling and unsupportive, interested only in Noah Lottick while he was alive.

Complaint, ¶ 59. As discussed *supra,* CSI's position in the structure of the Church of Scientology is such that a reader familiar with CSI could reasonably conclude that the passage referred to CSI. Thus, paragraph 58 of the complaint satisfies the "of and concerning" requirement.

5. Paragraph 62

Paragraph 62 of the complaint alleges that the following passage in the Article libeled CSI:

"The next month the Rowes flew to Glendale, Calif., where they shuttled daily from a local hotel to a Dianetics center. 'We thought they were brilliant people because they seemed to know so much about us,' recalls Dee. 'Then we realized our hotel room must have been bugged.' After bolting from the center, $23,000 poorer, the Rowes say, they were chased repeatedly by Scientologists on foot and in cars."

Complaint, ¶ 62. The Court finds that CSI has failed to demonstrate a reasonable connection to this statement. Permitting CSI to prosecute a libel claim on every occasion where any Scientology entity is discussed in a negative light would be too great an imposition on society's interest in ensuring an open forum for vigorous public debate. The above passage, whether read alone or in conjunction with the rest of the article, and informed by knowledge of the hierarchical structure of Scientology, could not support a jury finding that the statement refers to CSI. *See Provisional Government of the Republic of New Afrika,* 609 F.Supp. at 108; *Handelman,* 469 F.Supp. at 1050. Thus, paragraph 62 does not allege a statement that could reasonably considered to be of and concerning CSI.

6. Paragraph 67

Paragraph 67 of the complaint alleges that the following statement in the Article libeled CSI:

"In a court filing, one of the cult's many entities—the Church of Spiritual Technology—listed $503 million in income just for 1987."

Complaint, ¶ 67. The Court can discern no reference to CSI in this passage. Rather, the passage specifically identifies another Scientology entity, as distinguished from CSI. The Court explicitly rejects the suggestion that the statement must refer to CSI because all references to all Scientology entities are necessarily of and concerning CSI. CSI has failed to allege a reasonable connection between itself and the alleged libel. *See Mullenmeister,* 587 F.Supp. at 872. Thus, paragraph 67 fails to allege a statement of and concerning CSI.

Thus, the Court has determined that the allegations in paragraphs 40, 45, 52, and 58 are sufficiently pleaded to withstand the instant motion to dismiss the complaint for failure to state a cause of action upon which relief can be granted.

CONCLUSION

For all the foregoing reasons, the motion of defendants Time Warner, Inc., Time Inc. Magazine Co., and Richard Behar for dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure hereby is denied.

SO ORDERED